# RUSSELL LAW GROUP, PLLC
*Attorneys & Counselors at Law*
400 Post Avenue
Suite 401
Westbury, New York 11590
Tel: (516) 876-9300
Fax: (516) 876-9301

October 24, 2020

Honorable Frederic Block
United States District Court Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY, 11201

        Re: <u>USA v. Gibson Winters</u>
        Case No.: 20-17 (FB)

Honorable Judge Block,

    Gibson Winters, by way of his attorney, Camille Russell, Esq., from the law firm of the Russell Law Group, PLLC, an attorney duly admitted to practice law in the Eastern District for the State of New York, submits this letter as a formal request for bail conditions pursuant to 18 U.S.C. 3141.

    From on or about June 3, 2019 to September 25, 2019, members of the New York Police Department allege that they purchased cocaine from the defendant, Mr. Gibson Winters. While Mr. Winters has prior contact with the criminal justice system, he has no history of warranting or failing to return to court when directed to do so by a Judge. In fact, his history shows the very opposite. When one reviews his track record of returning to court it is clear that Mr. Winters is more likely to return to Court even when faced with a substantial period of incarceration.

    Mr. Winters has two children residing in Brooklyn who he loves dearly. Prior to his incarceration he played an integral part of their daily lives. Mr. Winters was an active father who transported his daughters to and from school, bathe and dressed them, occasionally cooked their meals and assisted them with homework. Below are photographs evidencing Mr. Winters's involvement with his daughters, Allure and Aalani Winters seven (7) and three (3) years old, respectively.

1






      In addition, Mr. Winters is on the verge of securing a record deal for a variety of his songs. His music was recently featured on 99.5 F.M and recently received acknowledgment on the well-known New York Radio Station Hot 97.1. F.M.

      The Government alleges that Mr. Winters openly and publicly referenced carrying a firearm in a December 7, 2017 Instagram post. On the contrary, when Mr. Winters wrote, "U be talking a lot, is gon link me or not? The thicker the spot, u no I'm bring my Glocc," he was reciting lyrics from one of the most popular rappers today, Favio Foreign, which can be found on the song titled *The Hottest Winter Ever*. The posting of these lyrics have no connection to violence nor is any way related to firearms or violence but was posted simply in support of the artist who is Mr. Winters' friend.

### I.    T**he Crimes Alleged in the Instant Indictment**

      The Government accuses Mr. Winters of possessing, conspiring and selling at least 28 grams of crack/cocaine. Mr. Winters does not choose to turn this proceeding into an evidentiary inquest or a mini-trial. However, upon information and belief, the

Government has no evidence where Mr. Winters agreed or conspired with anyone to commit any crime. Seemingly, there are significant evidentiary hurdles, namely establishing Mr. Winters' specific or general intent to commit the alleged crimes when the allegations are void of any agreement by Mr. Winters and another individual.

A review of the discovery provided by the Government does not disclose any agreement with any individual to engage in criminal activity. In fact, the notes penned by UC-217 specifically states that on or about July 15, 2019, at approximately 7:33 p.m. Mr. Winters contacted him and directed him to purchase narcotics solely from the defendant and no one else. (See GW000037-GW000042.pdf on Page Ten). This admission by law enforcement effectively establishes that there was no conspiracy but instead, if anything was market competition. This is highlighted by the fact that Mr. Winters is the only person charged in the instant Indictment and the discovery material disclosing audio and video footage of the subject sales do not include any other individual besides Mr. Winters. Furthermore, an alleged conspiracy netting a mere $4600.00 over a four-month period involving 19 sales is hardly proof of a conspiracy but more telling of a one-man operation.

"To convict [a] defendant of conspiracy in violation of 21 U.S.C. § 846, the government [is] required to prove that "(1) a conspiracy existed, (2) the defendant had knowledge of the conspiracy, and (3) the defendant knowingly and voluntarily participated in the conspiracy. Under the third element, the evidence must establish that the defendant both intended to join the conspiracy and intended to effectuate the objects of the conspiracy." U.S. v. Guzman-Ortiz, 365 F.Supp.3d 215 (2019).

As the Court noted in Guzman, "[W]hile the government may prove the charge entirely with circumstantial evidence, "[m]ere presence at the scene of a crime," without more, "is insufficient to prove membership in a conspiracy." United States v. Ocampo, 964 F.2d 80, 82 (1st Cir. 1992). Similarly, the fact that a defendant "knew what was going on" is, by itself, "not enough to establish intent to conspire." Id.; see also United States v. Lorenzo, 534 F.3d 153, 159 (2d Cir. 2008) ("suspicious circumstances are not enough to sustain a conviction for conspiracy, and mere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement; likewise, a defendant's mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy.") Id.

Accordingly, the Government has not made at least a prima facia showing that Mr. Winters engaged in a conspiracy pursuant to 18 U.S.C 846.

An in-depth review of the lab reports disclosed by the Government reveals that they lack a critical element necessary to sustain both Counts in the Indictment. The lab report for each sale provides an aggregate weight within a certain margin of error. When all of the transactions are tallied and Mr. Winters is given the benefit of the margin of error, the total aggregate weight is at most **26.744** grams **not 28 grams** as required by the statute. (See **Exhibit One**).

1. **Alleged, Yet Uncharged Assassination of Julius Caesar**

The Government alleges that Mr. Winters waved and pointed at the Mr. Caesar's car and in response to Mr. Winters's gestures Terrell Winters ran to Caesar's car and opened fire, killing him. There is no dispute that Demetrious Hedgepath arrived with a backpack and gave it to Terrell Winters, the contents of which were not disclosed to Gibson Winters. Nor is there any claim from the Government that Gibson Winters had any knowledge of the plan seemingly hatched between Hedgepath and Terrell Winters. Most telling is that when law enforcement investigated this matter and presumably had the footage the Government proffers, they arrested, indicted and is prosecuting Demetrious Hedgepath and Terrell Winters, not Gibson Winters.

I beseech Your Honor to carefully review this footage again. What the video reveals is that several individuals ran towards Caesar's car who waved and pointed to the vehicle. None of these other individuals are the subject of any criminal prosecutions in connection with this matter. Despite the waving and pointing, Terrell Winters maintained his position by the car and only moved after the individual next to him went towards him and said something causing Terrell Winters to run towards Caesar's car and open fire. Once Terrell Winters started shooting at the car, the video shows that Gibson Winters threw his hands in the air in a manner that suggests he is questioning why Terrell Winters reacted as he did.

I respectfully submit to Your Honor that Gibson Winter had no intent nor did he agree with anyone to assist in the murder Julius Caesar nor is there any evidence to support that conclusion.

2. **Alleged, Yet Uncharged Attempted Murder of John Doe.**

Unlike the footage in the Exhibit A which contains images of Gibson Winters, Exhibit B reveals footage of a shorter black male who shot at another black male in a situation that appears to be self-defense. As the male in the burgundy shirt attempts to converse with John Doe, he reached for his weapon causing the male in the burgundy shirt to try and stop him. When that fails the shooter seemingly reacted in self-defense.

The Government concludes that the individual in Exhibit B is Gibson Winters based on information that cell-site data shows that Gibson Winters' cellphone was connected to a tower located near the bodega during the time of the shooting. If the Government is in fact correct, it should be no surprise that Mr. Winters' cellphone is connected to a tower near the bodega as he spent significant time at 1054 Eastern Parkway, Apt A4, Brooklyn, NY 11213, a location just a few steps from the bodega. Additionally, he was arrested at 1135 St. Johns Place in Apt 3D, Brooklyn NY 11213 another location where he frequented. The addresses are in essence a stone's throw from the bodega which would cause Gibson Winters' cellphone to ping from the same cell tower. The area is question is shown below and the proximity of Mr. Winters' known locations is shown in relation to the bodega.



**Mr. Winters Has One Conviction Pertaining to A Firearm and None for Drug Possession or Sale Until He is Targeted by Law Enforcement in the Instant Case.**

The following is a timeline of Mr. Winters' arrests and convictions:

2003    Criminal Trespass (misdemeanor)
2004    Att. Criminal Possession of a Weapon (felony)-firearm
2008    Att. Criminal Possession of a Weapon (misdemeanor)-**box cutter for work**
2009    Resisting Arrest (misdemeanor) (**civil judgment in favor of Mr. Winters**)
2013    Possession of **Marijuana** (dismissed).

**Legal Standard and Procedure**

After a motion for detention has been filed, the district court must undertake a two-step inquiry. It must first determine by a preponderance of the evidence that the defendant either has been charged with one of the crimes enumerated in § 3142(f)(1)or that the defendant presents a risk of flight or obstruction of justice. Once this determination has been made, the Court must then turn to the question whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial. *See* <u>United States v. Friedman,</u> 837 F.2d 48, 48 (2d Cir. 1988); <u>United States v. Zuccaro</u>, No. 05-CR-196, 2005 WL 758808, at *1 (E.D.N.Y. Mar. 31, 2005). Importantly, the Bail Reform Act requires a reasonable assurance, not a guarantee, of safety. *See* <u>United States v. Barnett,</u> 986 F. Supp. 385, 400 (W.D. La. 1997). If the case does not fall within the set of circumstances defined by either § 3142(f)(1) or (2), then the defendant may not be detained without bail, "no matter how likely it is that he will do violence." <u>United States v. Dillard,</u> 214 F.3d 88, 89 (2d Cir. 2000), cert. denied, 532 U.S. 907 (2001). <u>U.S. v. Schwaborn,</u> CR-06-0328, 2007 WL 9653331 (EDNY 2007).

The Act limits prosecutorial discretion to move for detention by specifying with particularity the circumstances under which detention may be sought by the government.  Thus, the U.S. Attorney may only request detention in the following seven categories of cases:

**(A)** a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
**(B)** an offense for which the maximum sentence is life imprisonment or death;
**(C)** an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;
**(D)** any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or
**(E)** any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code; or
**(F)** a serious risk that such person will flee; or
**(G)** a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

6

**Argument**

The allegations in the instant case does not warrant detention because the Government has not made a prima facia showing that Mr. Winters is properly charged with any of the offenses outlined in in § 3142(f)(1) *See* U.S. v. Ploof, C.A.1 (Mass.) 1988, 851 F.2d 7. (Bail Reform Act did not authorize pretrial preventive detention solely on ground of dangerousness to another person or to community, where case did not involve crime of violence, potential life imprisonment or death penalty, *certain drug offenses*, or certain prior convictions).

Here, the offenses charged in the instant Indictment based on the lack of any agreement to support a conspiracy in addition to the insufficiency of the aggregate weight disclosed in the lab reports renders the charges outside the scope of 3142(f)(1). Accordingly, the nature and circumstances of the offenses charged, void of any crime of violence, along with the lack of the weight of the evidence are two factors that bode in Mr. Winters' favor.

Additionally, there is no evidence whatsoever that Mr. Winters poses a flight risk. On the contrary, his history with the criminal justice system, his ties to the community and his family support shows that he will return to court as directed by Your Honor.

**Mr. Winters Does Not Pose A Danger To The Community**

Although, the Government has not made a showing sufficient to reach this inquiry, the defense would be remiss if it did not address the Government's allegations of dangerousness.

As set forth above, Exhibit A does not provide a basis for this Court to conclude that Mr. Winters possess a danger to the community. He was not charged by the very able and competent District Attorney of Kings County for the murder of Julius Caesar and there is nothing in the footage that would lead the Court to conclude that Mr. Winters intended that Julius Caesar be killed. In fact, at the end of the footage Mr. Winters raised his hand in the air questioning the shooter's reaction.

The cell-site data showing that Mr. Winters's phone was connected to a tower near the bodega is likewise insufficient proof of anything as Mr. Winters resided just steps from that very location of the incident supplying a valid explanation about why his cellphone would be in the area.

Finally, it cannot be said with any seriousness that the sale or possession of twenty-eight (27) grams (arguably less) of cocaine base constitutes a danger warranting a denial of bail; particularly in light of the fact that this very offense on the State level is not even bail eligible.

**Mr. Winters Does Not Pose A Risk of Flight**

A review of Mr. Winters New York State record shows that he has no warrant history. When faced with a definite period of incarceration in 2004, Mr. Winters voluntarily appeared in Court and faced the consequences. Likewise, when he had multiple court appearances involving his misdemeanor offenses he returned to court as directed by the various New York State judges.

The Government's claim that Mr. Winters fled for six months after agents informed his girlfriend of an outstanding warrant is simply untrue. Mr. Winters, a citizen of the United States, remained in Kings County and was arrested at the very location that he has resided for years and where his car, known to the officers in the instant case, is registered- 1335 St. Johns Place, Brooklyn NY 11213.  Further proof that Mr. Winters was in Kings County and did not flee is evidenced by a check that he negotiated/cashed from the City of New York in June 2020 just a few blocks from the very precinct that allegedly was pursing him. In one of the photographs on Page One, Your Honor can see Mr. Winters with his daughters during COVID-19 in Kings County. The allegations that Mr. Winters fled is simply absurd and the Court should lend no credence whatsoever to these unsubstantiated allegations.

The Government cannot seriously claim that Mr. Winters' alleged profits of $4600.00 constitute means to support flight from the powerful and dominant reach of the United States government.

Mr. Winters is supported by his mother, Debbie Winters, brother ,Toy Winters, two sisters, Nakita and Valencia, his sister-in-law Natasha Winters, the mother of his children, Natalie Yard and friends -Sharie Hutchinson (NY City School Teacher) and Vanetta Grant, all of whom are employed and stand ready as sureties for Mr. Winters.

**Reasonable and Available Alternatives To Pre Trial Detention**.

If the Court is inclined to set bail there are certainly less restrictive means to ensure Mr. Winters return to Court. I propose the following conditions of release which is reasonable reassurance that Mr. Winters will return each and every time he is directed to do so:
    1. $500,000 personal recognizance bail secured by four co-signors;
    2. Surrender of all travel documents;

8

      3. Strict pre-trial supervision;
      4. Restricted travel to the Eastern (where his attorney's office is located);
      5. Seek and maintain employment;
      6. Drug testing as required by pretrial services; and
      7. Electronic Monitoring

      The aforementioned bail package is substantial and I respectfully submit that it would ensure Mr. Winters' appearance to answer the charges against him. Based on the bail package submitted, it is clear that Mr. Winters, his family and friends are essentially willing to put their lives on the line to avoid pretrial detention. They have submitted not only their life savings, but are willing to forfeit a significant portion of their future income which is more than reasonable to secure his appearance. Mr. Winters, in a statement attached as **Exhibit Two**, assures the Court that he will in fact return to Court as directed by Your Honor.

      Based on the foregoing, I respectfully beseech this Court to grant the instant application.

                              Yours etc.,
                              /s/ Camille Russell (4148151)

                              _____

                              Camille O. Russell, Esq.
                              Russell Law Group, PLLC
                              Attorneys for Gibson Winters
                              400 Post Avenue. Suite 401
                              Westbury, NY 11590
                              (516) 876-9300-telephone
                              (516) 876-9301-facsimile
                              crussellesq@aol.com

cc: AUSA Gillian Kassner, Esq.
    **via email on 10/24/2020**

**EXHIBIT ONE**

**Summary of Lab Report**

| Report # | Sale Date | Agg. Weight | Margin of Error |
|---|---|---|---|
| 1-8 | No lab disclosed | | |
| 9-10 | 6/3/19 | .111 | +/- .030 |
| 11 | 6/10/19 | .439 | +/- .060 |
| 12 | 6/6//19 | .111 | +/- .056 |
| 13 | 7/1/19 | .563 | +/- .030 |
| 14 | 7/4/19 | 1.588 | +/- .060 |
| 15 | No sale by Mr. Gibson | N/A | N/A |
| 16 | 7/17/19 | 1.226 | +/- .030 |
| 17 | No sale by Mr. Gibson | N/A | N/A |
| 18 | 7/22/19 | .864 | +/- .060 |
| 19 | No sale by Mr. Gibson | N/A | N/A |
| 20 | 7/29/19 | 1.761 | +/- .060 |
| 21 | 7/31/19 | .748 | +/- .060 |
| 22 | 8/6/19 | .933 | +/- .030 |
| 23 | 8/7/19. | 1.917 | +/- .090 |
| 24 | 8/16/19 | 3.386 | +/- .060 |
| 25 | 8/15/19 | .793 | +/- .060 |
| 26 | 8/19/19 | 2.670 | +/- .052 |
| 27 | 8/22/19 | 2.433 | +/- .060 |
| 28 | No lab disclosed | | |
| 29 | No lab disclosed | | |
| 30 | 8/26/19 | 2.328 | +/- .030 |
| 31 | 8/29/19 | 3.342 | +/- .060 |
| 32 | 9/4/19 | 2.26 | +/- .12 |
| 33 | 9/25/19 | .339 | +/- .060 |
| | | Total: **27.812** | Total: **1.068** |

**Net: 26.744**

Lab report numbers 15, 17, and 19 are not and cannot be attributed to Mr. Winters. The DD5 reports generated by law enforcement admittedly indicates that those sales were made by other individuals, not Mr. Winters. Moreover, after July 15, 2019, Mr. Winters

11

allegedly disavowed his connection with anyone, directing the undercover to purchase solely from him.

While the aggregate weight supplied by the initial lab reports gives us some insight into the facial insufficiency of the Indictment, further disclosure of all the records produced at the NYPD Lab in connection with testing is required to explore this issue further.

**EXHIBIT TWO**

Gibson Winters (92429053)

          MDC Brooklyn
          P. O. Box 329002
          Brooklyn , N.Y. 11232

United States District Court
Eastern District Of New York
Honorable Frederic Block
225 Cadman Plz East
Brooklyn New York 11201

Date : October 23,2020

Your Honor, I would like to put in this letter in support of my bail application.
I have been a resident of Brooklyn my entire life. First growing up in the project development of Marlboro housing and now being a part of the Bed Sty community.

While I have been in trouble before I would Like Your Honor to know that I have never ran from the consequences. I always do as the judge and my attorney tells me to do. There is no need for me to sit in this prison before trial especially when the jail is faced with so many cases of COVID-19.

If I have to go to prison for this case, I would at least like some time with my daughters Allure and Aalani. Like most men, I love my daughters more than life itself. My kids depend on me and see me as a strong father figure. I did not get the opportunity to at least say goodbye to them and have a talk with them about what my future may hold. With the bail suggestions my lawyer is asking for at least I would get that opportunity. I would also like the opportunity to least talk with the various people to see if I can maintain the hope of getting signed by a major label as an up and coming rap artist.

Your Honor I do not pose any danger to the community and I PROMISE YOU that I will NOT commit any crimes if you give me the opportunity to remain at home during my case. I will follow all of your instructions and if you ask me to wear a bracelet you can see my every move. I have never fled and did not run from anyone as the prosecutor says in her letter.

I have a very good and stable living situation with lots of supports from all my family and friends. I am very well known in my local community as an aspiring rap artist. My

music has been played on the radio multiple times.

I have never ran from any obligations in my life and fully intend to appear at every court date as scheduled. Given my very good and supportive environment at home and stable living arrangements, if your Honor chooses so, I could be placed on 24/7 ankle monitoring as well.

Thank you your Honor for considering my request no matter what you decide.

Gibson Winters